**CONKLIN & GARRETT, LTD.**
Plaintiff-Appellant,

v.

**M/V FINNROSE, Etc., et al.**
Defendants-Appellees.

No. 86–6040.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1987.

Malinda G. York, Houston, Tex., for plaintiff-appellant.

William C. Bullard, Houston, Tex., for Enso-Gutzeit & Atlantic Cargo Services AB.

Before WISDOM, HIGGINBOTHAM, and DAVIS, Circuit Judges.

WISDOM, Circuit Judge:

The question this appeal presents is the enforceability of a choice of forum clause in a bill of lading covered by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 et seq. We hold that the clause must yield to COGSA. We reverse and remand.

I.

Plaintiff/appellant, Conklin & Garrett, a Canadian corporation, sued for cargo damage in the Southern District of Texas against the M/V FINNROSE, a vessel that sails under a flag of the Bahamas, *in rem* and *in personam* against the defendants/appellees: Atlantic Cargo Services (ACS), a Swedish company, the charterer of the M/V FINNROSE; South Atlantic Cargo Shipping N.V. (SACS), a Finnish Company, the present owner of the M/V FINNROSE; and Enso-Gutzeit O/Y, also a Finnish company, the previous owner of the M/V FINNROSE.

The lawsuit arises out of damage to a merry-go-round that Conklin & Garrett had shipped from Felixstowe, United Kingdom, to Port Everglades, Florida, in February 1985. ACS issued the bill of lading for this cargo. The bill of lading provides: "any dispute arising under this bill of lading shall be decided in Finland and Finnish law shall apply except as provided elsewhere herein". The bill of lading also provides: "[n]otwithstanding any provisions found elsewhere in this B/L, insofar as the ... carriage covered by this ... contract is performed within the territorial limits of the United States it shall be subject to the provisions of the Carriage of Goods by Sea Act ... which shall be deemed to be incorporated herein".

The defendants filed a motion to dismiss for lack of jurisdiction based on the provision in the bill of lading providing that all disputes were to be resolved in Finland. The district court granted the motion.

II.

COGSA provides: "Every bill of lading ... which is evidence of a contract for the

carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter." 46 U.S.C. § 1300. Because the merry-go-round was shipped to an American port, it is undisputed that COGSA covers the bill of lading.

COGSA also provides that "[a]ny clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect". 46 U.S.C. § 1303(8) (section 3(8)). In the light of this congressional command, the question here is whether Finland is the forum where the dispute at issue must be litigated.

The defendants contend that *M/S BREMEN and Unterweser Reederei v. Zapata Off-shore Co.*,[1] which arose in this circuit, controls the decision. *Bremen* held that the forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances".[2] Defendants argue that there has been no showing that selection of Finland as the forum is unreasonable. Conklin and Garrett respond that *Bremen* is not controlling because the towage contract at issue in *Bremen* was not covered by COGSA.[3]

### III.

In *Bremen* the "contract was not between some indigent American seaman and

[a] Greek shipowner to try disputes in Piraeus, Greece. It was not a towing contract in inland American waterways with the towage company having superior bargaining leverage.[4] The contract required the towage company to tow a six million dollar drilling rig from Venice, Louisiana, near the mouth of the Mississippi, through the Gulf of Mexico, [across the Atlantic], across the Mediterranean and up the Adriatic to Ravenna, Italy".[5] Zapata advertised for bids. In short, it involved a negotiated contract for unusual towage, not a bill of lading. Essential elements in the contract were an exculpatory clause for negligence and an agreement for trial of disputes by British courts, which recognize the validity of such a clause. Earlier, however, the Supreme Court had declined to enforce a clause exempting a tug from liability for negligent towage in inland waters.[6] In *Bremen* the contract was entered into by two large companies, after arms-length negotiations by experienced attorneys. Moreover, the Supreme Court expressly noted that COGSA was not applicable to the case.[7]

"The ruling in *Zapata [Bremen]* controls the field of admiralty to the extent that no federal legislation to the contrary is on the books."[8] We hold that in this case COGSA is applicable and controlling.

### IV.

This Court has not addressed the issue squarely.

In *Carbon Black Export v. The S.S. Monrosa*,[9] an American exporter sued to

---

**1.** 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

**2.** *Id.* at 10, 92 S.Ct. at 1913.

**3.** *Id.* at n. 11, 92 S.Ct. at 1913 n. 11.

**4.** *See Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955); *Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co.*, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963).

**5.** *Unterweser Reederei and Zapata Off-shore Co. v. M/S BREMEN*, 446 F.2d 907, 908–9 (5th Cir. 1971) (Wisdom, J., dissenting (en banc)).

**6.** *See* n. 4.

**7.** 407 U.S. at 10 n. 11, 92 S.Ct. at 1913 n. 11.

**8.** Nadelman, *Choice-of-Court Clauses in the United States*, 21 Am.J.Comp.L. 124, 134 (1973).

**9.** 254 F.2d 297 (5th Cir.1958), *cert. improvidently granted and writ dismissed*, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959). The dissent in *Bremen* criticized *Monrosa*, considered it "outmoded", and called for our Court to overrule it.

recover for nondelivery of a cargo placed in the United States aboard the *Monrosa* for shipment to Italy. The action was *in rem* against the vessel and in *in personam* against the owner, an Italian corporation. Under a provision in the contract any action for loss or damage was to be brought only in Genoa. This Court concluded (1) that the forum selection, by its own terms, did not apply to *in rem* proceedings against the vessel and (2) that agreements to oust the jurisdiction of United States courts are contrary to public policy. The Supreme Court granted certiorari but after hearing argument, dismissed the writ as improvidently granted. A majority of the Court agreed that the clause did not cover an *in rem* action and that the case was not an "appropriate instance to pass on the extent to which effect can be given to stipulations in ocean bills of lading not to resort to the courts in this country".[10] *Bremen*, however, overrules the broad reading this Court gave to the clause in *Monrosa*. The *Monrosa* panel did observe that the bills of lading were printed in English "tending to indicate that the Courts of the United States were in a good position to pass upon the rights of the parties". This Court did not rely on COG-SA.

In *Indussa Corporation v. S.S. Ranborg*,[11] decided before *Bremen*, the Court of Appeals for the Second Circuit, sitting en banc, held that section 3(8) of COGSA invalidates a forum selection clause requiring litigation of a dispute in a foreign forum even if the bill of lading (such as the one at issue here) provides for the application of COGSA in the foreign forum. Judge Friendly, for the Court, pointed out: "Even when the foreign court would apply [COGSA] ..., requiring trial abroad *might* lessen the carrier's liability since there could be no assurance that [the foreign court] would apply [COGSA] in the same way as would an American tribunal subject to the uniform control of the Supreme Court, and section 3(8) can be read as covering a potential and not simply a demonstrable lessening of liability.... We think that Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed."[12]

In *Union Ins. Soc. of Canton, Ltd. v. S.S. Elikon*,[13] the Fourth Circuit reached the same result as the Second Circuit. The Court pointed out that although "*Bremen* holds that forum selection clauses are presumptively valid, ... [the Supreme Court] only expressed this view in the absence of any congressional policy on the subject, much less a contrary congressional policy.... We think the general policy here must recede before the specific policy enunciated by Congress through COGSA."[14]

Gilmore and Black in their well-known work, *The Law of Admiralty*, fully support *Ranborg* and anticipate *Elikon*.[15] They go so far as to say: "COGSA allows a freedom of contracting out of its terms, but only in the

**10.** 254 F.2d at 301.

**11.** 377 F.2d 200 (2d Cir.1967).

**12.** *Id.* at 203 (emphasis in original, citations omitted).

**13.** 642 F.2d 721 (4th Cir.1981).

**14.** *Id.* at 724, 725. The Court distinguished *Bremen* stating:
The Supreme Court upheld the London forum selection clause because of the bargained nature of the contract, the reasonableness of the forum selected and the general policy encouraging private contractual choice for dispute resolution, particularly in the context of inter-national trade. The Court specifically distinguished *Indussa*, noting the nonapplicability of COGSA to the towage contract before it. *Id* at 724. Again, in a footnote the court added: "The inapplicability of COGSA apparently was not contested [in *Bremen*] in the Supreme Court or in the litigation before the lower courts. Two reasons suggest themselves as to why COGSA did not apply: (1) there was no bill of lading, and (2) a mobile offshore drilling rig is not a 'good' while being towed. *See* 46 U.S.C. § 1301(b)(c)." 642 F.2d at 724.

**15.** *See also* Black, *The Bremen, COGSA, and the Problem of Conflicting Interpretation*, 6 Vand.J. Transnat'l L. 363 (1973); Nadelman, *Choice-of-Court Clauses in the United States*, 21 Am.J. Comp.L. 124 (1973).

direction of *increasing* the shipowner's liability, and never in the direction of diminishing them. This apparent onesideness is a commonsense recognition of the inequality in bargaining power which both Harter [27 Stat. 445 (1893), 46 U.S.C. §§ 190–196] and COGSA were designed to redress, and of the fact that one of the great objectives of both acts is to prevent the impairment of the value and negotiability of the ocean bill of lading." [16] "It is entirely unrealistic to look to an obligation to sue overseas as not 'lessening' the liability of the carrier".[17]

In view of the statutory language of COGSA and also considering the pertinent authorities, we hold that the district court erred in declining to take jurisdiction. *Bremen* is inapposite.

### V.

The district court summarily dismissed the case "for want of jurisdiction". We reverse and remand the case to the district court. In doing so we do not foreclose consideration of the forum non conveniens issue. *See Elikon*[18].

The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.

16. G. Gilmore & C. Black, *The Law of Admiralty* 145–47 (1975).

17. *Id.* at 146 n. 23.

18. 642 F.2d at 725.