**HUGHES DRILLING FLUIDS,**
Plaintiff–Appellant,

v.

**M/V LUO FU SHAN, its engines, tackle, apparel, etc., et al.,**
Defendants–Appellees.

No. 87–3607.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1988.

F.A. Courtenay, Jr., Julianne Owens, Courtenay, Forstall, Grace & Hebert, New Orleans, La., for plaintiff-appellant.

James H. Roussel, Conrad S.P. Williams, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendants-appellees.

Before THORNBERRY, WILLIAMS, and DAVIS, Circuit Judges:

W. EUGENE DAVIS, Circuit Judge:

Hughes Drilling Fluids (Hughes), the owner of cargo aboard the defendant's vessel, appeals the dismissal of its suit for declaratory judgment seeking a declaration of its general average obligation. The district court concluded that the forum selected in the bill of lading, the Republic of China, was binding on the parties and dismissed the suit. We conclude that the forum selection clause conflicts with the Carriage of Goods by Sea Act (COGSA) and reverse.

## I.

The motor vessel LUO FU SHAN owned by defendant-appellee, Guangzhou Maritime Transport Bureau of China (Guangzhou), was damaged in a storm and her cargo contaminated while on a voyage from the vessel's home port, Zhanjiang, People's Republic of China, to the United States. Before the casualty, Hughes purchased from Guangzhou a portion of the LUO FU SHAN's cargo of bulk barite and received bills of lading covering the barite it purchased.

Following the casualty, the vessel diverted to Guam for temporary repairs and then returned to Zhanjiang for permanent repairs. Guangzhou later declared general average,[1] which was submitted to a Chinese agency for arbitration. That agency assessed Hughes' contribution at $452,200.75. Hughes posted a bond to cover its possible obligations under the general average assessment and shipped its barite on another vessel.

Before the Chinese agency assessed Hughes' general average contribution, Hughes had filed this suit in the Eastern District of Louisiana against Guangzhou and the LUO FU SHAN. At the time the action was filed, Hughes sought damages for the cargo contamination it understood had occurred and also sought a declaratory judgment that it owed no general average contribution because the LUO FU SHAN was unseaworthy. When the barite arrived in New Orleans, however, Hughes discovered that the cargo was undamaged. Consequently, Hughes dismissed its claim for cargo damage but continued to assert its declaratory judgment action. In response to a motion by appellee, the district court dismissed Hughes' declaratory judgment action for lack of jurisdiction. The court found enforceable the clause in the bill of lading that specified the People's Republic of China as the forum for any dispute that arose over the shipment.

In this appeal Hughes contends, as it did in the district court, that the forum selection clause is unenforceable because it lessens the carrier's liability to the cargo owner in violation of the COGSA.

## II.

The question presented in this case is whether a clause in a bill of lading choosing the carrier's home forum conflicts with COGSA when a dispute arises between the carrier and the cargo owner over general average.

The district court concluded that *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) required it to give effect to the forum selected by the parties in the bill of lading.

In *Bremen*, a German corporation contracted to tow a drilling rig from Venice, Louisiana, to a point off Ravenna, Italy, in the Adriatic Sea. The contract was freely negotiated in an arms length transaction. The forum selected, England, was a compromise, neutral forum rather than the home of one of the parties. Perhaps most important, the Supreme Court carefully noted that COGSA was not applicable to the case. 407 U.S. at 10, n. 11, 92 S.Ct. at 1913, n. 11.

In *Conklin & Garrett, Ltd. v. M/V Finnrose*, 826 F.2d 1441 (5th Cir.1987) we considered whether *Bremen* required enforcement of a forum selection clause in a cargo damage case. The owner of cargo damaged during shipment from the United Kingdom to Port Everglades, Florida, on the FINNROSE sued to recover for that damage. The bill of lading under which the cargo was shipped contained a forum selection clause that required any dispute arising under the bill to be decided in Finland according to Finnish law. After a thorough review of the authorities, we found it entirely unrealistic to believe that no reduction in the carrier's liability occurred if the cargo owner were required to sue the carrier for damaged cargo in a foreign forum. Because COGSA does not permit the parties to contract out of its terms if such a contract diminishes the shipowner's liability, we concluded that the shipowner could not enforce the forum selection clause. We held that *Bremen* " 'controls the field of admiralty to the extent that no federal legislation to the contrary is on the books.' We hold that in this case COGSA is applicable and controlling." *M/V FINNROSE*, 826 F.2d at 1442 (quoting Nadelman, *Choice-of-Court*

---

**1.** The doctrine of general average allows carriers, under certain circumstances, to require cargo owners to contribute pro rata for damage to the ship or cargo during transit. The doctrine requires all parties to a sea adventure—cargo owners as well as shipowner—to share the costs of sacrifices and extraordinary expenses necessary to save the ship and its cargo. *See generally* G. Gilmore & C. Black, the Law of Admiralty 244–48 (2d ed. 1975).

Clauses in the United States, 21 Am.J. Comp.L. 124, 134 (1973)).

If, in the present case, the dispute between Hughes and Guangzhou related to cargo damage rather than general average, FINNROSE would be indistinguishable and we would not enforce the forum selection clause. Guangzhou does not seriously dispute this conclusion. It argues, however, that Hughes' action for a declaratory judgment seeking a declaration of Hughes' obligation for general average requires a different result.

The question for decision therefore narrows to whether we should reach a conclusion in this case contrary to the one we reached in FINNROSE because the controversy relates to general average rather than cargo damage. The answer depends upon whether COGSA applies to a controversy over general average. If it does, our reasoning in FINNROSE applies to this case and renders the forum selection clause unenforceable. For reasons set forth below, it is clear to us that COGSA does apply to a general average claim.

First, COGSA applies by its own terms. The act provides in part that "[n]othing in this Act shall be held to prevent the insertion in a bill of lading of any *lawful* provision regarding general average." 46 U.S. C.App. § 1305 (emphasis added). Gilmore & Black in their well-known *Law of Admiralty* conclude that "the word 'lawful' undoubtedly has some force." Gilmore & Black at 268. They suggest that COGSA prevents carriers from expanding their right to general average beyond their immunity under COGSA from cargo damage actions by shippers. Gilmore & Black at 268.

Finally, this circuit has expressly held that "general average concepts ... have been made subject to the Carriage of Goods by Sea Act...." *Orient Mid–East Lines, Inc. v. A Shipment of Rice onboard S/S ORIENT TRANSPORTER*, 496 F.2d 1032, 1035 (5th Cir.1974). *See also Louis Dreyfus Corp. v. 27,946 Long Tons of Corn*, 830 F.2d 1321, 1330 (5th Cir.1987).

The forum selection clause that requires the parties to the bill of lading issued in this case to litigate their disputes in The People's Republic of China favors carriers. It tends to lessen the carrier's liability. *See FINNROSE*, 826 F.2d at 1443–44; Gilmore & Black at 268. This violates COGSA. Just as carriers may not enforce a forum selection clause in a cargo damage case that requires litigation in a foreign forum, they may not enforce such a clause in a controversy relating to general average.

For reasons advanced above, the judgment of the district court is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.