**JAPAN SUN OIL CO., LTD.**

**v.**

**The M/V MAASDIJK, its engines, tackle, apparel, furniture, etc. in rem, and K/S Lisbet, Bergen Ship Management AS, Univan Management Services AS, Vulcanus, Nedlloyd Tankers, B.V. Seachem Tankers (USA), Inc. and Iino Kaiun Kaisha Ltd. (Tokyo).**

Civ. A. No. 94–1383.

United States District Court,
E.D. Louisiana.

Sept. 29, 1994.

Francis A. Courtenay, Jr., Donald J. Volpi, Jr., Philip S. Brooks, Jr., Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, LA, for plaintiff.

Harvey Gardere Gleason, Wagner, Bagot & Gleason, New Orleans, LA, for Lisbet K/S, AS Vulcanus.

Maurie D. Yager, Terriberry, Carroll & Yancey, New Orleans, LA, for Nedlloyd Tankers, B.V.

Robert Taylor Lemon, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Iino Kaiun Kaisha, Ltd. Tokyo.

BERRIGAN, District Judge.

The defendant Iino Kaium Kaisha Ltd. (Tokyo) ("IKK") filed a Motion to Compel and to Stay Litigation pending Arbitration which was submitted on briefs. Having considered the memoranda of counsel, the exhibits, the record, and the applicable law, the Court GRANTS the IKK motion for the following reasons:

## BACKGROUND

Plaintiff's cargo of rubber process oil, which had been loaded aboard the M/V MAASDIJK at Burnside, Louisiana, allegedly arrived in Yokohama, Japan "short in quantity and contaminated and damaged severely." Document 1, p. 4. In this court, plaintiff, a corporation with its principal place of business in Japan, sued the vessel *in rem*, and six other defendants *in personam* who allegedly are the owners, operators, charterers and/or managers of the M/V MAASDIJK. The defendants are all corporations organized and existing under the laws of unspecified foreign nations.

## ANALYSIS

In this motion, IKK contends that the applicable bills of lading and charter parties require compulsory arbitration in London. In opposition to IKK's motion, the plaintiff contends that the arbitration clauses in the bills of lading and charter parties are vague and unenforceable and that their enforcement, if any, will violate the Carriage of Goods By Sea Act ("COGSA").

■ Agreements to arbitrate are heavily favored and rigorously enforced by the courts. *See e.g.* 9 U.S.C. § 1 *et seq; Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765

(1983); *Southern Constructors Group v. Dynalectric Co.,* 2 F.3d 606, 610, n. 15 (5th Cir.1993); *Hartford Lloyd's Insurance Co. v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir. 1990). 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for the revocation of any contract.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941. This is especially true in agreements affecting interstate and foreign commerce.

> [C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement [for foreign arbitration], even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors Corp.* 473 U.S. at 629, 105 S.Ct. at 3355 (1985).

■ The Federal Arbitration Act ("FAA"), specifically 9 U.S.C. § 3[1] and 9 U.S.C. § 4,[2] provides this Court with the general authority to order compulsory arbitration in London and to stay these proceedings pending the disposition of the London

---

1. 9 U.S.C. § 3 provides:

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial on the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default in proceeding with such arbitration.

2. 9 U.S.C. § 4 provides:

   The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is *not* an issue, the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

This language requires an evidentiary hearing when there is a dispute over an agreement to arbitrate, but appellate courts have not held district courts to the letter of the law where "the parties were afforded the opportunity, of which they ... took full advantage, exhaustively to brief the issues to the district court ...." *Commerce Park at DFW Freeport v. Mardian Const. Co.,* 729 F.2d 334, 340 (5th Cir.1984); *Accord Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 795 F.2d 1111, 1115 n. 7 (1st Cir.1986). Such is the case here.

arbitration. The Convention on Recognition and Enforcement of Foreign Arbitral Awards ["Convention"] also requires Courts to enforce any written agreement which provides arbitration as the mechanism to resolve international commercial disputes. 9 U.S.C. § 201. Whether parties should generally be compelled to arbitrate involves a two-step inquiry. "First, the court must determine whether the parties agreed to arbitrate the dispute. [*Mitsubishi Motors Corp.*, 473 U.S. at 625, 105 S.Ct. at 3353.] ... [Then] it must consider whether any federal statute or policy renders the claims nonarbitrable. *Id.* at 628, 105 S.Ct. at 3355." *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992). A limited inquiry into the validity of arbitration is also appropriate under the Convention:

(1) is there an agreement in writing to arbitrate the dispute ...;

(2) does the agreement provide for arbitration in the territory of a Convention signatory;

(3) does the agreement to arbitrate arise out of a commercial legal relationship; and

(4) is a party to the agreement not an American citizen?

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144 (5th Cir.1985).

In the case at bar, the Tanker Bills of Lading between Ergon, Inc., as shipper, and Japan Sun Oil Company ("Japan Sun"), as consignee, two of which were dated at Burnside, Louisiana on March 24, 1993, and one of which was dated at Burnside, Louisiana on April 27, 1993, provide for arbitration:

3. ARBITRATION. *Any and all differences and disputes of whatsoever nature arising out of this Bill of Lading shall be put to Arbitration* in the City of New York or in the City of London, whichever place is specified in the Charter Party and in accordance with the Arbitration clause therein. (Emphasis added.)

Document 10, Exhibit A. The face of each Tanker Bill of Lading provides that

[t]he shipment is carried under and pursuant to the terms of the Contract of Affreightment/Charter Party dated FEB. 12, 1993 at AS PER CHARTER PARTY between SEACHEM TANKERS LTD., MONROVIA and IINO—KAIUN KAISHA as Charterer, and *all the terms whatsoever of the said Contract of Affreightment/Charter Party including the Arbitration clause,* cargo lien clause, and the conditions appearing on both sides of this Bill of Lading to apply and to *govern the rights of the parties concerned in this shipment.* A copy of a Contract of Affreightment/Charter Party may be obtained from the Shipper or the Charterer upon request. (Emphasis added.)

*Id.* The February 12, 1993, Tanker Voyage Charter Party between SEACHEM TANKERS LTD. MONROVIA, LIBERIA and IKK provides:

24. ARBITRATION *Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration* in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final.... (Emphasis added.)

Document 9, Exhibit B. The same language is contained in the February 12, 1993, Tanker Voyage Charter Party between IKK and Japan Sun. *Id.*, Exhibit C. In neither Charter Party is New York or London designated in Part I as the place of arbitration. However, a February 16, 1993, addendum to the February 12, 1993, Tanker Voyage Charter Party between SEACHEM TANKERS LTD. MONROVIA, LIBERIA and IKK, specifies that "[t]he place of General Average and arbitration shall be London in accordance with English law." *Id.*, Exhibit B. Plaintiff contends that it did not agree to and had no notice of the addendum, and therefore should not have to arbitrate this dispute in London.

"Arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute

at issue....' Doubts as to arbitrability are to be resolved in favor of arbitration." (Citations omitted.) *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir.1984).

■ The February 12, 1993, Charter Party between Seachem Tankers Ltd. and IKK is the only Charter Party expressly referenced on the face of the Tanker Bills of Lading of March 24, 1993 and April 27, 1993, to which Japan Sun is the consignee. Those Tanker Bills of Lading expressly state on their face that "all the terms whatsoever of the said Contract of Affreightment/Charter Party including the Arbitration clause ... apply and ... govern the rights of the parties concerned in this shipment." *Id.* That would include the addendum of February 16, 1993, which designates London as the place of arbitration. Accordingly, the Court finds that there is an agreement in writing to arbitrate the dispute, and that written agreement is enforceable because it provides for arbitration in the territory of a Convention signatory, it arises out of a commercial legal relationship, and the parties to the agreement are not American citizens.

Having found that an agreement to arbitrate exists, the Court now addresses the second inquiry: whether any federal statute or policy renders the claims nonarbitrable. In this case, the plaintiff particularly contends that compulsory arbitration in London will violate COGSA.

> Under ... [the FAA], the party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute.

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989).

■ "COGSA was passed in 1936 as the American enactment of the Hague Rules, and was part of an international effort to achieve uniformity and simplicity in bills of lading used in foreign trade." (Citations omitted.) *Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER*, 29 F.3d 727, 728 (1st Cir.1994). COGSA applies to " '[e]very bill of lading ... which is evidence of a contract for the carriage of goods by sea to or from parts of the United States in foreign trade....' 46 U.S.C. § 1300." *Id.* Charter parties, without more, are excluded from COGSA, but "any bill of lading ... issued under or pursuant to a charter party...." is included within the term "contract of carriage" and "if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter." 46 U.S.C. §§ 1301(b) and 1305. Accordingly, COGSA applies *ex propio vigiore*.

In this case, the particular bills of lading and the charter parties also expressly provide that they shall be governed by COGSA. The Paramount Clauses of the Tanker Bills of Lading state that the bills of lading

> shall be governed by, and have effect subject to, the rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading ... (hereafter the "Hague Rules") as amended ... (hereafter the Hague–Visby Rules). Nothing contained herein shall be deemed to be either a surrender by the carrier of any of his rights or immunities or any increase of any of his responsibilities or liabilities under the Hague–Visby Rules.

Document 10, Exhibit A, Paramount Clause. The Clauses Paramount of the charter parties relative to the "Issuance and Terms of Bills of Lading" state that the Bills of Lading "shall have effect subject to the provision of the Carriage of Goods by the Sea Act of the United States...." *Id.*, Exhibits B and C.

Plaintiff contends that enforcement of clauses in the Bills of Lading and Charter Parties which make arbitration compulsory in London will have the effect of diminishing the shippers' liability and therefore are null and void under 46 U.S.C. § 1303(8) ["Any clause, covenant, or agreement in a contract of carriage ... lessening such liability otherwise than as provided in this chapter shall be null and void and of no effect."] There are no Fifth Circuit cases on point. Both *Hughes Drilling Fluids v. M/V Luo Fu Shan*, 852 F.2d 840 (5th Cir.1988) and *Conklin & Garrett, Ltd. v. M/V Finnrose*, 826

F.2d 1441 (5th Cir.1987), cited by the plaintiff, involve forum selection clauses, not arbitration clauses.[3] *M/V Luo Fu Shan* and *M/V Finnrose* also both relied on *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967), a forum selection case from the Second Circuit which decided that a clause in the bill of lading, requiring suit to be brought in Norway, violated COGSA. Despite a footnote in *Indussa* to the contrary,[4] a few district courts and the Eleventh Circuit have extended *Indussa* to arbitration clauses. *See generally State Establishment for Agricultural Product Trading v. M/V Wesermunde*, 838 F.2d 1576 (11th Cir.1988);[5] *Organes Enterprises v. M/J Khalij Frost*, 1989 A.M.C. 1460, 1989 WL 37660 (S.D.N.Y.1989);[6] *Siderius, Inc. v. M.V. "Ida Prima"*, 613 F.Supp 916 (S.D.N.Y.1985);[7] *Pacific Lumber & Shipping Co. v. Star Shipping A/S*, 464

**3.** In *Hughes Drilling Fluids v. M/V Luo Fu Shan*, 852 F.2d 840 (5th Cir.1988), the Fifth Circuit held that the forum selection clause in the bill of lading requiring suit to be brought in The People's Republic of China, the carrier's home forum, lessened the carrier's liability and violated COGSA. In *Conklin & Garrett, Ltd. v. M/V Finnrose*, 826 F.2d 1441 (5th Cir.1987), the forum selection clause in a bill of lading for a merry-go-round shipped from England to Florida, which provided that all disputes were to be decided in Finland under Finnish law, violated COGSA.

**4.** Our ruling does not touch the question of arbitration clauses in bills of lading which require this to be held abroad. The validity of such a clause in a charter party, or in a bill of lading effectively incorporating such a clause in a charter party, has been frequently sustained. *See Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966), *appeal dismissed for want of jurisdiction*, 372 F.2d 123 (2d Cir.1967), slip opinions 1103, and cases cited. Although the Federal Arbitration Act adopted in 1925, 43 Stat. 883, validated a written arbitration provision "in any maritime transaction", § 2, and defined that phrase to include "bills of lading of water carriers." § , COGSA, enacted in 1936, 49 Stat. 1207, made no reference to that form of procedure. If there be any inconsistency between the two acts, presumably the Arbitration Act would prevail by virtue of its reenactment as positive law in 1947, 61 Stat. 669.....
*Indussa Corporation v. S.S. Ranborg*, 377 F.2d 200, 204, n. 4 (2d Cir.1967).

**5.** *State Establishment for Agricultural Product Trading v. M/V Wesermunde*, 838 F.2d 1576 (11th Cir.1988), is distinguishable on its facts. The *Wesermunde* bills of lading made no reference to arbitration. The *Wesermunde* court found that State Establishment had not been given actual notice of the arbitration provision in the charter party, and, while the parties had expressly agreed to COGSA's protections, they had never expressly agreed to foreign arbitration. 838 F.2d at 1582.

**6.** *Organes Enterprises, Inc. v. M/J Khalij Frost*, 1989 A.M.C. 1460, 1989 WL 37660 (S.D.N.Y. 1989), is distinguishable both on the facts and on the law. In *M/J Khalij Frost*, New Jersey corporations sued pursuant to a bill of lading which provided for London arbitration. The bill of lading made no reference to any charter party but was only for common carriage. The bill of lading form to be used in the event of a chartering was not filled out. The New York district court found that COGSA applied and the foreign arbitration clause was null and void because it lessened the alleged liability of the defendants in this case. *Id.* at 1460. The New York district court in *Khalij Frost* provided a four-point rationale for its decision:

> First, a foreign arbitration clause, like a foreign jurisdictional clause, could limit an American plaintiff's ability to enforce effectively a carrier's liability and cause such plaintiff to agree to an otherwise unacceptable settlement. For example, in addition to travel expense, "[t]he expense alone of obtaining [foreign] counsel will assure that many smaller claims will be foregone." Second, "the cargo claimant will have little assurance that the arbitrators will enforce COGSA. Nor can he be confident that the U.S. court in which the action is brought will ensure that the arbitrator will enforce COGSA." Third, "arbitrators' decisions are rarely explained. And courts do not vacate the arbitrators' awards except on extreme grounds, such as misconduct or manifest disregard for the law." Fourth, an arbitrator is not required to apply the established rules of evidence, and may consider inadmissable evidence such as hearsay. (Citations omitted.)

*Khalij Frost*, 1989 A.M.C. at 1463.

**7.** *Siderius, Inc. v. M.V. "Ida Prima"*, 613 F.Supp. 916 (S.D.N.Y.1985), the district court found that the owner had relinquished whatever rights it had to arbitration by subsequent agreements that it made with the plaintiff. Notwithstanding that fact, the *Siderius* court appeared reluctant to order arbitration for a number of fact-specific reasons. Apart from its general concern that compulsory arbitration might deprive the cargo consignee of the right to bring the action in the United States courts, the court questioned whether the arbitration clause in the charter party applied to the bill of lading and whether the consignee had notice of the arbitration provision where no reference was made to arbitration in the bill of lading itself. In this case, the bill of lading clearly references arbitration.

F.Supp. 1314 (W.D.Wash.1979).[8] It is to these cases that the plaintiff looks for support in opposing the motion to compel arbitration. The Court does not find them persuasive.

In light of the subsequent United States Supreme Court decisions,[9] other district courts have questioned [10] or limited [11] many of the cases since *Indussa* which have voided foreign arbitration clauses because of COGSA. Most recently, the line of cases spawned by *Indussa* was expressly rejected by the First Circuit in favor of those federal decisions, including one from this Circuit, which have upheld foreign arbitration clauses in bills of lading subject to COGSA. *M/V SKY REEFER, supra.*[12] The First Circuit upheld a foreign arbitration clause against a COGSA challenge, based on its belief that "the FAA alone governs the validity of arbi-

tration clauses, both foreign and domestic, and consequently removes them from the grasp of COGSA." *M/V SKY REEFER*, 29 F.3d at 731. To reach that decision, the First Circuit first looked to general principles of statutory analysis: "a later enacted statute generally limits the scope of an earlier statute if the two statutes conflict ... [and] where two statutes conflict, regardless of the priority of enactment, the specific statute ordinarily controls the general." (Citations omitted.) *Id.*

With respect to the former canon, the FAA must be given priority over COGSA in light of the FAA's reenactment in 1947, eleven years after COGSA was passed. Similarly the latter canon suggests that the FAA be given effect. Section 3(8) of COGSA, which voids any clause in a bill of

**8.** In *Pacific Lumber & Shipping Company, Inc., v. Star Shipping A/S*, 464 F.Supp. 1314 (W.D.Wash. 1979), the Court denied a motion for stay of action pending arbitration because the bills of lading were contracts of adhesion. The evidence established that the shippers had not received the completed bills of lading until after the Star Clipper had sailed, that the "London arbitration clause" was inserted by the defendant without discussion, and that the shippers had no option to delete the clauses.

**9.** *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) enforced a forum selection clause in a passenger contract of passage. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) upheld an arbitration clause in an international commercial agreement. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) enforced forum selection clauses in a maritime contract.

**10.** *See e.g. Citrus Marketing Bd. v. M/V Ecuadorian Reefer*, 754 F.Supp. 229, 233 (D.Mass.1990)

Of the four reasons set forth in the *M/V Khalij Frost* and *M.V. Ida Prima* decisions, the first reason merely deals with the inconvenience of the foreign forum for an American plaintiff (a concern that is not even present in this case since neither of the plaintiffs is an American corporation), the next two reasons reflect mistrust of arbitrators and the last reason indicates mistrust of the arbitration process. Since the Supreme Court has clearly rejected such mistrust of arbitrators and the arbitration process as the basis for a court's refusal to enforce contractual arbitration clauses, I conclude that the above cases are inconsistent with the commands of the Court and do not

provide adequate support for plaintiffs' position.

*Accord Fabrica De Tejidos La Bellota S.A. v. M/V MAR*, 799 F.Supp. 546, 561 (D.V.I.1992) ("*Carnival* calls into question earlier judicial views that forum selection clauses invariably tend to lessen a carrier's liability so as to violate Article 3(8).")

**11.** *See e.g. Alucentro Div. Dell'Alusuisse Italia S.P.A. v. M/V Hafnia*, 785 F.Supp. 155 (M.D.Fla. 1991):

[T]he *Wesermunde* court held when a private contract of carriage incorporates COGSA, as in the case at bar, the parties may expressly agree to arbitrate disputes in a foreign country having no nexus to the transaction, and thus forgo COGSA's protection, only if the parties have actual notice of the arbitration provision.

As noted above, the parties made specific reference to the arbitration provision of the charter party in the hand-typed incorporating clause of the bill of lading.

*Id.* at 157.

**12.** *See, e.g., Nissho Iwai Amer. Corp. v. M/V Sea Bridge*, 1991 A.M.C. 2070, 1991 WL 182117 (D.Md.1991); *Citrus Mktg. Bd. v. M/V Ecuadorian Reefer*, 754 Supp. 229 (D.Mass.1990); *Travelers Indemn. Co. v. M/V Mediterranean Star*, 1988 A.M.C. 2483, 1988 WL 78363 (S.D.N.Y.1988); *Mid South Feeds, Inc. v. M/V Aqua Marine*, 1988 A.M.C. 437 (S.D.Ga.1986); *Midland Tar Distillers, Inc. v. M/T Lotos*, 362 F.Supp. 1311, 1315 (S.D.N.Y.1973); *Mitsubishi Shoji Kaisha Ltd. v. MS Galini*, 323 F.Supp. 79, 83–84 (S.D.Tex.1971); *Kurt Orban Co. v. S/S Clymenia*, 318 F.Supp. 1387, 1390 (S.D.N.Y.1970).

*Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER*, 29 F.3d 727, 731 (1st Cir.1994).

lading that "lessens" the carrier's liability, makes no reference to arbitration, or for that matter, forum selection clauses. Conversely, the FAA specifically validates arbitration clauses contained in maritime bills of lading. See 9 U.S.C. § 1, 2. *Id.* The *M/V SKY REEFER* court then delineated a distinction between forum selection clauses and arbitration clauses:

> "[T]here was no compelling congressional mandate [in forum selection cases] in favor of giving effect to agreements to litigate before foreign tribunals" [*Mitsubishi Shoji Kaisha Ltd. v.*] *MS Galini*, 323 F.Supp. [79,] 83 [ (S.D.Tex.1971 [13]) "... [and] unlike a foreign forum selection clause, an agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute...." *MS Galini*, 323 F.Supp. at 83.

*M/V SKY REEFER*, 29 F.3d at 732. The First Circuit and earlier district courts also were mindful of the United States Supreme Court decisions validating the strong federal policy favoring arbitration.

> American courts' mistrust of foreign courts, a driving force in the *Indussa* court's decision to invalidate foreign choice-of-forum clauses, is an inappropriate consideration in the context of arbitration. *See Mitsubishi Motors*, 473 U.S. at 626–27, 105 S.Ct. at 3354 (We are "well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.")....

*M/V SKY REEFER*, 29 F.3d at 732.

▮ Accordingly, this Court finds that COGSA does not preclude enforcement of the foreign arbitration clause contained in the Bills of Lading and that this action should be stayed pending the outcome of arbitration.

In the latter part of its memorandum in opposition to the motion to compel arbitration, plaintiff appeals to principles of fairness and equity because plaintiff alleges that the ocean carrier will raise a statute of limitations defense to the London arbitration. "[I]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Commerce Park*, 729 F.2d at 338, quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). "[M]atters of procedural arbitrability, such as, *inter alia*, whether the request for arbitration was timely under the arbitration agreement, are for the arbitrator to decide." *Commerce Park*, 729 F.2d at 339, n. 5. *See also Sedco*, 767 F.2d at 1151, n. 29; *Smith Barney Shearson, Inc. v. Boone*, 838 F.Supp. 1156, 1159 (N.D.Tex.1993). *Accord, Office of Supply, Gov. of Rep. of Korea v. New York Navigation Co., Inc.*, 469 F.2d 377, 380 (2d Cir.1972) ("[I]t is for the arbitrators, not the court, to decide whether a claim is time-barred by their agreement"); *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396, 399 (S.D.N.Y.1966) ("The court having found the existence of a valid arbitration provision, all other issues, including but not limited to interpretation and limitations, are for the arbitrators and not the court.") [14]

Notwithstanding, in granting the motion to stay, the Court retains its jurisdiction over

---

**13.** In *Mitsubishi Shoji Kaisha Ltd. v. MS Galini*, 323 F.Supp. 79 (S.D.Tex.1971), a shipment of Mexican maize, loaded at a Texas port, was allegedly contaminated when the cargo was discharged in Japan. The Charter Party provided for arbitration in London. Plaintiff, a Japanese concern, argued that the arbitration clause conflicted with COGSA, 46 U.S.C. § 1303(8) and relied heavily on *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2nd Cir.1967) and *Carbon Black Export v. The SS Monrosa*, 254 F.2d 297 (5th Cir.1958), *cert. dism.*, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959), cases in which the court "declined to enforce an agreement to litigate, in the event of a dispute, in the courts of a foreign country." 323 F.Supp. at 83. The *Mitsubishi Shoji Kaisha* court granted the charterer's motion to stay because forum selection clauses differed from arbitration clauses, the latter of which had been expressly endorsed by Congress and did "not deprive a federal court of its jurisdiction." *Id.*

**14.** *See also Mitsubishi Motors Corp.*, 473 U.S. at 636, 105 S.Ct. at 3359 ("There is no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism.")

the dispute and its authority to address matters unresolved through arbitration, if any, once the London proceedings are concluded.[15]

### ORDER

Accordingly, IT IS ORDERED that the Motion of the defendant Iino Kaium Kaisha Ltd. (Tokyo) ("IKK") to Compel and to Stay Litigation pending Arbitration IS hereby GRANTED.[16]

New Orleans, Louisiana, this 28 day of September, 1994.

---

**15.** *See generally Mitsubishi Motors Corp.,* 473 U.S. at 638, 105 S.Ct. at 3359; *R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534 (5th Cir. 1992); *Forsythe International, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017 (5th Cir.1990); *Totem Marine Tug & Barge v. North American Towing,* 607 F.2d 649 (5th Cir.1979).

**16.** In a memorandum in support of IKK's motion, K/S Lisbet asks this Court to order consolidation of the arbitration proceedings. The Court has no motion to consolidate before it. However, even if it had, the "district court is limited to enforcing arbitration agreements according to their terms." *Del E. Webb Const. v. Richardson Hospital Authority,* 823 F.2d 145, 150 (5th Cir. 1987). *See e.g.* 9 U.S.C. § 4. *Accord Baesler v. Continental Grain Co.,* 900 F.2d 1193, 1194–95 (8th Cir.1990); *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d 635, 636–37 (9th Cir. 1984). There is no provision in the Tanker Bills of Lading and Charter Parties submitted to the Court for consolidated arbitration.