In the Matter of ARBITRATION BE-TWEEN The STANDARD TALLOW CORPORATION, Petitioner,

and

KIL–MANAGEMENT A/S, Respondent.

No. 95 Civ. 4412 (CBM).

United States District Court,
S.D. New York.

Oct. 23, 1995.

Richard A. Zimmerman, Law Offices of Richard A. Zimmerman, New York City, for petitioner.

Mark C. Flavin, Haight, Gardner, Poor & Havens, New York City, for respondent.

## MEMORANDUM OPINION ON PETITION TO COMPEL ARBITRATION

MOTLEY, District Judge.

The instant petition, brought under 9 U.S.C. § 1, *et seq.* (The Federal Arbitration Act (FAA)), asks the court to compel arbitration between the parties and to have such arbitration take place in New York City. Petitioner alleges to have sustained damages to goods shipped by respondent from New York City to Barcelona, Spain. Petitioner has asked, in accordance with the its interpretation of the terms of a contract between the parties, to have such arbitration of the dispute take place in New York City. Respondent refuses to submit to arbitration in New York, arguing that the contract between the parties requires that arbitration take place in London. For the reasons set forth below, the court agrees with respondent's interpretation of the contract and the arbitration clauses found therein. The petition to compel arbitration in New York is therefore denied.

## BACKGROUND

The petitioner is organized as a corporation under the laws of New Jersey. The respondent is a Danish corporation. Petitioner claims that goods respondent had contracted to carry from the United States to Spain were damaged upon arrival. Under its interpretation of the contract (hereinafter "the agreement"), petitioner asserts a purported right to arbitration of the damages claim in New York City.

The agreement itself contains two "Parts." A "Preamble" provides, in relevant part: "In the event of a conflict [between Parts I and II] *the provisions of Part I shall prevail over those contained in Part II to the extent of such conflict."* (emphasis added). The agreement has *two* arbitration clauses, each found in different parts thereof: Part I of the agreement directs arbitration in London

(hereinafter, "the London clause"); Part II compels arbitration in New York (hereinafter, "the New York clause").

Part I, the "typewritten" portion of the agreement, sets forth, in the "Special Provisions" section (Sec. H, Para. 4.), as follows:

GENERAL AVERAGE AND ARBITRATION IN LONDON—YORK/ANTWERP RULES AS AMENDED 1990 TO APPLY, ENGLISH LAW TO APPLY.

Part II, the "form" part of the agreement, at para. 31, sets forth in relevant part:

Arbitration: Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York, Owner and Charterer each appointing an arbitrator ... Such arbitration shall be conducted in conformity with the provisions and procedure of the United States Arbitration Act ...

Relying on the contents of this clause, petitioner argues that the matter should be referred to arbitration by the court under the FAA. Respondent opposes the petition, asserting that the London clause controls and compels arbitration in London.

The agreement contains other elements that are important to note to aid the resolution of the instant conflict. First, paragraph 6 of Part I (i.e., the typewritten part of the agreement) provides as follows: "CLAUSE 22.B—DELETED: NO TRANSSHIPMENT." Part II, para. 22(b) of the agreement also covers transshipment but the words of this clause are stricken. Second, Part II, para. 20, provides:

GENERAL AVERAGE. General average shall be adjusted, stated and settled, according to York–Antwerp Rules 1960 at such port or place in the United States as may be selected by the Owner, and as to matters not provided for by these Rules, according to the laws and usages at the port of New York. . . .

■ Although it seems apparent that, at a minimum, the London clause controls as to any arbitration of general average claims,[1] no

---

1. The law of general average covers losses to property of one party sustained to limit further

losses to a number of parties. Accordingly, damages can be recovered by the suffering party

portion of this paragraph in Part II of the agreement is stricken.

Because respondent refuses to engage in arbitration under the New York clause and insists on arbitration in London in accordance with the London clause, the matter is now before the court on petitioner's motion to compel arbitration in New York. For the reasons stated herein, the petition is denied.

## DISCUSSION

### The Federal Arbitration Act.

■ Petitioner asks that the court refer the dispute to arbitration under the FAA, 9 U.S.C. § 1, *et seq.* (1988).

In addressing such a petition, the court has four tasks:

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, its must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) (citations omitted).

■ In the absence of an express agreement by the parties to the contrary, the question of whether the parties agreed to arbitrate a dispute is one for the courts to resolve. *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 208, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991); *See also, First Options of Chicago, Inc. v. Kaplan*, ── U.S. ──, ──────, 115 S.Ct. 1920, 1922–24, 131 L.Ed.2d 985 (1995); *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649–651, 106 S.Ct.

1415, 1418–1420, 89 L.Ed.2d 648 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).

The court finds, and the parties admit, that an agreement to submit any disputes under the contract to arbitration does in fact exist. According to the *Genesco* standard set forth above, the court must now determine the scope of that agreement.[2]

### Interpretation of the Agreement.

■ In interpreting any contract, the court must be confident that the contract is not ambiguous. *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.' " *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (citation omitted). For the reasons set forth below, the court finds that the provisions of the contract in question are unambiguous and petitioner's reading of the arbitration clauses thereof " 'strain[s] the contract language beyond its reasonable and ordinary meaning.' " *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992) (alteration in original) (citation omitted).

■ Interpretation of an arbitration clause under the FAA is a question of federal law, and must be interpreted in accordance with the general federal law of contracts. "In enacting the Federal Arbitration Act, Congress created national substantive law governing questions of the validity and the enforceability of arbitration agreements under

according to the principle that " 'what is given, or sacrificed, in time of danger, for the sake of all, is to be replaced by a general contribution on the part of all who have been thereby brought to safety.' " *Eagle Terminal Tankers v. Ins. Co. of U.S.S.R.*, 637 F.2d 890, 892 (2nd Cir.1981) (citations omitted).

In an effort to narrow the application of the London clause, petitioner asserts that this provision only covers arbitration of general average

disputes, which are not a part of petitioner's claims to date.

2. Because there are no apparent conflicts with federal statutory law barring the instant dispute from arbitration and no pending litigation that the court would be asked to stay pending arbitration, the court need not address the third and fourth elements of the standard set forth in *Genesco* for review of arbitration agreements.

its coverage." *Genesco*, 815 F.2d at 845; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *McPheeters v. McGinn, Smith and Company, Inc.*, 953 F.2d 771, 772 (2d Cir.1992); *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.1972), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). This federal substantive law of contracts "comprises generally accepted principles of contract law." *Genesco*, 815 F.2d at 845; *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C.Cir.1985) (holding that substantive federal law of contracts "dovetails precisely with general principles of contract law").

■ Under general principles of federal contract law, the court must review "the parties' intent as expressed in the language of the contract documents." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994); *S.A. Mineracao da Trindade–Samitri v. Utah International, Inc.*, 745 F.2d 190, 193–194 (2d Cir.1984).

■ As set forth above, the Preamble of the agreement states, unequivocally, that in the event of an internal conflict within the agreement, Part I controls over language in Part II. This provision clearly gives priority to the London clause, which appears in Part I of the agreement.[3] Accordingly, the court finds that the London clause controls the location of any arbitration under the agreement.

The London clause's priority is also supported by the fact that this clause is contained in the "typewritten" portion of the agreement, as opposed to the simple "form" part thereof, which contains the New York clause. The parties' desire to have the detailed Part I provisions control over those contained in the "boilerplate" Part II of the

contract is supported not only by the parties' manifest preference for Part I as set forth in the Preamble described above but also sound rules of contract interpretation, which consider typewritten or handwritten contract provisions superior to form clauses in the event of a conflict. *See Restatement (Second) of Contracts* § 203(d) cmt. f. (1981).

Petitioner submits that if the parties wished to have the London clause control as to the location of all arbitration, the New York clause would have been expressly stricken in the body of the contract. The parties did indicate the precedence of another Part I clause over a Part II portion of the agreement by "striking out" the subsequent, obsolete clause. The parties neglected to strike another superceded clause in the form part of the contract, however, i.e., the General Average clause in Part II, found at para. 20. This Part II provision was clearly negated by the controlling arbitration clause in Part I of the contract, and this argument is thus unpersuasive.

This court's interpretation of the agreement favoring the London clause is also supported by a host of decisions where courts have reviewed arbitration clauses comparable to those contained in the instant agreement.

Courts in this District have interpreted similar arbitration clauses on several occasions and these decisions favor an interpretation in the instant case recognizing the London clause's superiority. In *Lowry v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966) (Weinfeld, J.), the court interpreted a contract with *two* arbitration clauses that read as follows: in one clause "all disputes * * * arising out of this contract shall * * * be referred to the final arbitrament of two Arbitrators carrying on business in London * * * "; in the other, "General average, and arbitration, if any, to be settled in Paris." *Id.* at 397. Although there was a potential conflict between these two clauses, the court found that the Paris clause controlled the

---

**3.** Although a court must, when possible, ascribe meaning to all terms of a contract so as not to render any part of it superfluous, *Goodheart Clothing v. Laura Goodman Enterprises*, 962 F.2d 268, 272 (2d Cir.1992), given the Preamble of the instant agreement, the parties obviously were aware that conflicts could arise in the agreement,

rendering clauses in Part II ineffective. It is clear, therefore, that "such effect [i.e. rendering the New York clause meaningless to the extent it conflicts with the Part I London clause] was the parties' intent upon drafting and agreeing to the contract." *Garza v. Marine Transport Lines, Inc.*, 861 F.2d at 27.

location of the arbitration, but that the London clause controlled only the nationality of the arbitrators. *Id.* at 398. Subsequently, in *Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V.,* 609 F.Supp. 75 (S.D.N.Y. 1985) (Leisure, J.), the court interpreted an arbitration clause to require arbitration in New York where it read: "Arbitration: If required in New York City."[4] *Id.* at 77–78.

Similarly, decisions from other districts also support this court's conclusion. In *Japan Sun Oil Co., Ltd. v. Maasdijk,* 864 F.Supp. 561 (E.D.La.1994), the original agreement there also provided that arbitration could be either in New York or London. In an addendum to the agreement, the parties contracted as follows: " '[t]he place of General Average and arbitration shall be London in accordance with English law' ". *Id.* at 564. The court there found that the subsequent amendment was the parties' expression of their intent to have arbitration referred to London. In *Hoogovens Ijmuiden Verkoopkantoor, B.V. v. Canadian Fort Navigation Co. Ltd.,* 1992 WL 186071 (N.D.Ill.1992), the contract in question provided as follows:

> The charter agreement contained both boilerplate provisions and also "additional clauses" that the parties separately negotiated and agreed to. One such typed written provision is clause number twenty-eight. It provides, in full: "General Average and arbitration to be settled in London."

*Id.* at *1.

The court found that the parties had actively negotiated the inclusion of this clause and thus it had to be enforced as requiring arbitration. The court there never questioned that arbitration, once compelled, would be in London.

The court's interpretation of the agreement as well as the weight of the case law construing maritime contracts similar to those before the court thus clearly favor a ruling against the petitioner and a finding that the London arbitration clause controls in the instant dispute.

### RELIEF

Although the court expressly finds that an agreement to arbitrate all disputes between the parties in London does in fact exist, the respondent did not file a cross-petition to refer the matter to arbitration in London. The court thus does not have before it a proper petition to compel arbitration there and the court refuses to provide such relief *sua sponte.* For these reasons, the petition is denied and no order is issued directing arbitration in London.

### CONCLUSION

For the reasons set forth above, the petition to compel arbitration is denied in all respects.

---

**4.** In *Hoogovens Ijmuiden Verkooptantoor v. M.V. "Sea Cattleya",* 852 F.Supp. 6 (S.D.N.Y.1994) (Knapp, J.), the court disagreed with the conclusions reached in *Lowry, supra,* and *Oriental Commercial, supra.* on grounds irrelevant to the instant dispute. Interpreting a clause that read "General Average and arbitration to be settled in the Netherlands," the court expressly distinguished the *Oriental Commercial* case referred to above by finding that although this clause clearly indicated that arbitration, if any, would be settled in the Netherlands, such arbitration was merely optional. The court therefore refused to force the parties to submit to arbitration.

This court finds, however, that arbitration is compulsory under the instant agreement.