**PERVEL INDUSTRIES, INC.,**
Petitioner,

v.

**TM WALLCOVERING, INC.,**
Respondent.

No. 87 Civ. 3556 (DNE).

United States District Court,
S.D. New York.

Dec. 22, 1987.

Donald L. Kreindler, Brett J. Meyer, Kreindler & Relkin, New York City, for petitioner.

Leo G. Kailas, Milgrim, Thomajan & Lee, New York City, for respondent.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge.

The petitioner, Pervel Industries ("Pervel"), seeks an order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14 (1982), and the Anti–Injunction Statute, 28 U.S.C. § 2283, to compel arbitration of a contractual dispute between the parties and to stay the pending action that respondent, TM Wallcovering, Inc. ("TM"), has filed in Tennessee state court, regarding the same dispute.

Pervel, a Delaware corporation with its principal place of business in New York, manufactures wallcoverings. TM, a Tennessee corporation, is a distributor of wallcoverings. In 1983, TM and Pervel agreed that TM would act as distributor of certain lines of wallcoverings manufactured by Pervel and TM subsequently purchased certain lines from Pervel. The only written memorialization of these transactions that has been presented to the court is in the form of two letters from Pervel to TM and the written order acknowledgement forms generated for each shipment of wallcoverings ordered by TM.

TM instituted a civil action in Tennessee state court claiming that Pervel breached its distributorship contract with TM. TM alleged that Pervel itself was distributing at a lower price the same wallcoverings it provided to TM, thereby infringing on what TM claimed was an exclusive distributorship.

Pervel then filed the instant petition claiming that the dispute at issue in the Tennessee action should be submitted to an arbitrator. Pervel's claim is founded on a broad arbitration clause in the order acknowledgement forms that were generated by each order and purchase by TM. TM contends that the dispute is properly before the Tennessee court and is not arbitrable because the dispute does not arise in relation to the contract embodied in the acknowledgement form, but rather relates to a separate and distinct contract establishing TM as the exclusive distributor for certain Pervel wallcovering lines.

## DISCUSSION

### 1. *Arbitrability Issue*

■ The FAA[1] provides that an agreement to settle a controversy arising out of a contract involving a transaction in interstate commerce "shall be valid, irrevocable, and enforceable." The threshold question of arbitrability is a matter for judicial determination. *See AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed. 2d 648 (1986); *Pitta v. Hotel Ass'n,* 806 F.2d 419, 422 (2d Cir.1986). There is a strong federal policy favoring arbitration of disputes, requiring that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

The arbitration clause at issue in this case is broadly worded,[2] providing in relevant part that "[a]ny controversy arising out of or relating to this contract shall be settled by arbitration." TM's primary con-

1. The FAA is codified at 9 U.S.C. §§ 1–14. Section 2 of the FAA sets forth the effect of arbitration agreements and provides as follows:

   A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
   9 U.S.C. § 2 (1982).

2. The clause in dispute reads as follows:

   14. Arbitration: Any controversy arising out of or relating to this contract shall be settled

tention is that the controversy in this case does not "relate to" the contract containing the arbitration clause, rather the dispute is over a "separate and distinct" contract establishing TM as an exclusive distributor.

TM relies primarily on *Necchi S.p.A. v. Necchi Sewing Mach. Sales*, 348 F.2d 693 (2d Cir.1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). This case stand for the proposition that a dispute ought not to be arbitrated if it arises out of a contract "separate and distinct" from the contract containing the arbitration clause.

*Necchi* is readily distinguishable from the case at bar. In the *Necchi* case, petitioner had been the exclusive distributor of respondent's sewing machines for 15 years. This arrangement had been based on a series of contracts, the latest contract, entered into in 1961, being the focus of the case. The Second Circuit held that one of the items sought to be arbitrated, the substance of which was not identified, was not arbitrable because it had "been governed by a contract entered into by [respondent] and [petitioner] in 1958, and that contract, one without an arbitration provision, has remained distinct and separate from the 1961 exclusive distributorship agreement containing the arbitration provision." *Necchi, supra*, 348 F.2d at 698.

■ The instant case differs in several important respects. First, there are not two formalized contracts as there were in *Necchi* that would enable the court to say with confidence that these contracts were "separate and distinct."

Second, the extent of the exclusivity of distribution was, in any event, determined by the actual purchases by TM from Pervel. The alleged exclusive distributorship could only take effect upon a sale of a line to TM, and TM, by its own allegations, had no right to distribute Pervel products until such a sale was made. *See* Complaint, *Tm Wallcovering, Inc. v. Pervel Indus.*, No. 94324 (Chancery Court Tennessee, Shelby County Mar. 20, 1987). In *Necchi*, the court stated that the mere fact that a dispute would not have arisen absent the agreement containing the arbitration clause was insufficient to render the dispute arbitrable. In the instant case, it is the alleged distributorship arrangement, with no arbitration clause, that would not have arisen had the sales not been made.

Finally, the letter from Pervel to TM dated November 30, 1983, one of the series of letters that TM contends embodies the distributorship agreement, suggests that sales to TM will be governed by Pervel's standard contract. The letter, confirming a prior agreement between the parties, states that all purchases by TM, after the initial consignment, would be "on a non consigned basis under *normal terms*." (Emphasis added). This statement suggests that the relationship between the parties would be governed by the standard sales contract, which includes the arbitration clause in question.

Thus, this court cannot say that there was a "separate and distinct" agreement out of which the underlying dispute in this action arises. Consequently, this case falls outside the precedent set forth by *Necchi* and cases following it. Moreover, given the broad language of the arbitration clause and the strong federal policy favoring arbitration, this court cannot say that the dispute between the parties to this action does not "arise out of or relate to" the contracts for sale of wallcoverings repre-

by arbitration in the City of New York in accordance with the Rules then obtaining of the American Arbitration Association or the General Arbitration Council of the Textile Industry (before a panel of three arbitrators), whichever shall be first selected by the party instituting said arbitration. The arbitrators sitting in any such controversy shall have no power to alter or modify any express provisions of this contract including, without limitation, the provisions of paragraph 6 applicable to Claims, or to render any award which by its terms effects any such alteration, or modification. The parties consent to the jur- isdiction of the Supreme Court of New York, and of the United States District Court for the Southern District of New York for all purposes in connection with said arbitration. The parties further consent that any process or notice of motion or other application to either of said Courts or a Judge thereof, may be served outside the State or Southern District of New York by registered mail or by personal service provided a reasonable time for appearance is allowed or in such other manner as may be permissible under the Rules of said Court.

sented by the order acknowledgment forms. Actually, the fact that TM so ardently contends that it would never have made those very purchases if it had known that its distributorship was not considered exclusive by Pervel belies its position that the dispute does not "relate to" the contracts for individual purchases from Pervel.

Accordingly, the court holds that the parties must submit their dispute to arbitration.

### 2. Stay of State Court Proceedings

■ As a general rule, federal courts are prohibited from enjoining proceedings in state court by the Anti–Injunction Statute, 28 U.S.C. § 2283 (1982).[3] There are, however, three clearly defined exceptions to that statute. *See Atlantic Coast Lines R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970). One such exception provides that a federal court may stay proceedings in state court where it is "necessary in aid of jurisdiction." 28 U.S.C. § 2283. The case law is clear that this provision provides authority for a federal district court to stay a parallel state proceeding pending arbitration. *See Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368, 372 & n. 13 (S.D.N.Y.) (Weinfeld, J.), *aff'd without opinion*, 742 F.2d 1438 (2nd Cir.1983).

Moreover, respondent has not opposed petitioner's motion with respect to the requested stay of the Tennessee proceeding. This court finds no reason why it should not stay the Tennesse state court action pending arbitration of the dispute.

### CONCLUSION

Accordingly, petitioner's motions to compel arbitration and to stay the pending Tennessee state court proceedings are granted.

SO ORDERED.

**3.** The Anti–Injunction Statute reads as follows: A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect and effectuate its judgments.
28 U.S.C. § 2283.