**In the Matter of the ARBITRATION BE-TWEEN NUCLEAR ELECTRIC IN-SURANCE LIMITED, Petitioner,**

and

**CENTRAL POWER AND LIGHT COMPANY, Respondent.**

**No. 96 Civ. 2661 (SHS).**

United States District Court, S.D. New York.

May 24, 1996.

**430**

Lawrence W. Newman, Baker & McKenzie, New York City, for petitioner.

## OPINION

STEIN, District Judge:

This matter is before this Court on the petition of Nuclear Electric Insurance Limited ("NEIL") (1) to compel respondent Central Power and Light ("CPL") to arbitrate, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, all of CPL's claims that CPL has asserted against NEIL in an action filed in the state courts of Texas, and (2) to stay the pending Texas state court proceedings pending final disposition of the arbitration. Pursuant to an order to show cause signed on April 18, 1996, this matter was heard on May 17, 1996. For the following reasons, the petition is granted.

## BACKGROUND

The pertinent facts in this case are essentially undisputed. NEIL is a mutual insurance company owned and managed by member insureds, all of which are United States utilities companies that own or operate nuclear power plants. (Petition to Compel Arbitration and to Stay Texas State Court Proceedings ¶ 1.) NEIL provides insurance coverage to its members for the expense of purchasing replacement power resulting from outages that exceed 21 weeks in duration due to property damage. (Petition ¶ 1). NEIL is a Bermuda corporation with its principal place of business in Delaware. (Petition ¶ 1.) CPL is a Texas corporation with its principal place of business in Texas, a member insured of NEIL, and part-owner of

the South Texas Project ("STP") nuclear facility in Bay City, Texas. (Petition ¶ 2.)

On September 15, 1992, CPL purchased and entered into a NEIL Extra Expense Policy, providing for weekly indemnity of $576,827 for STP unit 1 and $593,338 for STP unit 2, for outages exceeding 21 weeks. (Petition ¶ 4.) The limit of liability is $70,188,-309 for unit 1 and $72,197,368 for unit 2. (Petition ¶ 4.) The policy provides:

> Any claim or controversy between [CPL] and [NEIL] as to any matters arising out of or relating to this Policy (other than failure to agree as to the amount of the Loss), which is not settled between themselves, shall be submitted to arbitration in New York City by three arbitrators at the request of either [CPL] or [NEIL].

(Policy, attached to Petition as ex. 1, at § XI.14(b)). The policy also provides: "To the extent that any claim or controversy between [CPL] and [NEIL] hereunder is not subject to appraisal or arbitration for any reason whatsoever, the United States District Court for the Southern District of New York shall have exclusive jurisdiction thereof." (Petition, ex. 1, at § XI.14(c)). It further provides that New York law governs the agreement. (Petition, ex. 1, at § XI.13.)

Section 8 of Article 1.14–1 of the Texas Insurance Code ("section 8") provides that, except for insurance policies that are "independently procured" pursuant to § 2(b)4 of that Article, "any contract of insurance effective in this state and entered into by an unauthorized insurer is unenforceable by such insurer." While both parties agree that NEIL is an "unauthorized insurer" within the meaning of the Texas Insurance Code, NEIL contends that the policy falls into the "independently procured" exception and CPL disputes this.

On August 19, 1994, CPL submitted a claim in the amount of $24,141,662.74 for losses occurring due to shutdowns at STP. (Petition ¶ 8.) NEIL denied the claim on November 21, 1995, on the ground that the claim was not covered under the policy. (Petition ¶ 9.) On April 9, 1996, CPL filed suit in the 148th Judicial District Court of Nueces County, Texas, claiming breach of contract

and of NEIL's obligation of good faith and fair dealing in violation of Texas law. (Petition ¶¶ 10–12.) CPL has also threatened to seek treble damages if NEIL does not pay the claim by June 9, 1996. (Petition ¶ 13.) CPL also demands that NEIL, as an unauthorized insurance company doing business in Texas, post a $25 million bond, pursuant to Texas state law, to cover any potential judgment before filing any pleadings in that action. (Affidavit of Lawrence W. Newman, sworn to on April 15, 1996, at ¶ 16; *id.* ex. 4, ¶ 31.)

On April 15, 1996, NEIL served on CPL a Request for Arbitration (Petition ¶ 16.), and filed this petition in this Court. By Order to Show Cause, NEIL sought a temporary restraining order staying the Texas action, which was denied. As noted above, argument on the petition was heard on May 17, 1996.

### DISCUSSION

#### A. Abstention

■ CPL first contends that this Court should abstain from hearing this petition pursuant to the abstention doctrine first enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 333–34, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943). In its most recent explication of that doctrine, the U.S. Supreme Court has written:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) ("*NOPSI*") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d

483 (1976)); *see also In re Joint E. & S. Dist. Asbestos Litigation*, 78 F.3d 764, 775 (2d Cir.1996); *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 561 (S.D.N.Y.1995).

CPL argues that abstention is appropriate here because the case involves a difficult question of the interpretation of the Texas Insurance Code, and insurance is an area of regulation uniquely within the cognizance of the states by virtue of the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.* CPL also notes that the Texas action was filed before this petition.

■ However, the mere existence of a pending matter in state court, even one that preceded in time the federal proceeding, is insufficient to require abstention. *See German*, 885 F.Supp. at 561. Nor is abstention required merely because this action may concern the interpretation of Texas law regulating insurance. *See Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 600–01 (2d Cir.1988). "*Burford* does not require abstention whenever there exists a complex state administrative process, or even in all cases where there is a potential for conflict with state regulatory law or policy from federal litigation...." *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1247 (2d Cir.1992); *see also NOPSI*, 491 U.S. at 362, 109 S.Ct. at 2515; *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir.1990).

This matter is essentially a contract dispute between two purely private parties, implicating Texas's interest as a regulator of the insurance business only indirectly. CPL has not identified with specificity any aspect of Texas's administrative scheme that would be unduly hampered by the Court's exercise of jurisdiction over this case. Moreover, it is not clear that the Texas Insurance Code has any application to this case, given that the parties dispute whether New York or Texas law applies. In short, CPL has not demonstrated that abstention here is necessary to "avoid needless disruption of state efforts to establish coherent policy in" the field of insurance regulation. *Friedman v. Revenue*

*Management of New York, Inc.*, 38 F.3d 668, 671 (2d Cir.1994).

Given the narrowness of the *Burford* abstention doctrine, *see Tribune Co. v. Abiola*, 66 F.3d 12, 17 (2d Cir.1995), and this Court's "virtually unflagging obligation" to exercise the jurisdiction it possesses, *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246; *see Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46, 49 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994), the Court declines to abstain from hearing this petition.

### B. Petition to Compel Arbitration

■ Title 9 U.S.C. § 4 provides that, on a petition to compel arbitration, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the Court must grant the petition. Thus, in deciding such a petition, the Court may consider only two questions: first, whether the parties have executed an arbitration clause covering the dispute in issue; and second, whether one party has refused to abide by the arbitration clause. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–99 (2d Cir.1996). If both questions are answered in the affirmative, the Court must grant the petition.

CPL does not contest the fact that, by filing an action in state court, it did not abide by the arbitration clause. Therefore, the only remaining question is whether the parties have entered into an arbitration agreement that covers the instant dispute. Section XI.14(b) of the policy provides for arbitration of "[a]ny claim or controversy between [CPL] and [NEIL] as to any matters arising out of or relating to this Policy (other than failure to agree as to the amount of the Loss)." This language is broad enough to cover a disputed claim made pursuant to the policy. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Indeed, disputes such as the underlying one here appear to be the primary focus of the clause. However, CPL proffers two reasons why the Court should find that the parties did not agree to arbitrate this dispute—one going to the scope of the arbitration clause and one going to the making of the arbitration clause.

### 1. The Scope of the Arbitration Clause

■ CPL first contends that this dispute falls within the parenthetical exception in the policy, *i.e.*, it constitutes a "failure to agree as to the amount of the Loss." CPL claims a loss in excess of $24 million, while, by denying the claim, NEIL has decided that the loss is $0.

This argument can be readily disposed of. CPL's interpretation would eviscerate the arbitration clause because virtually any dispute over policy coverage would constitute a disagreement over "the amount of the Loss." Such an interpretation is unreasonable. In contradistinction to CPL's position, a rational interpretation of the exception to arbitration contained in the arbitration clause is that it applies only where both parties agree that a loss is covered by the policy but they fail to agree on the amount of that loss.

### 2. The Making of the Arbitration Clause

■ CPL's argument that the policy is unenforceable by NEIL by virtue of section 8 is more complex. CPL first asserts that, after determining that an agreement to arbitrate exists, the Court must determine "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). CPL contends that section 8 constitutes one such external legal constraint on the arbitrability of this dispute.

However, the language of *Mitsubishi* concerns the analysis a court must undertake to determine whether a federal statutory cause of action is arbitrable pursuant to an arbitration agreement. This becomes clear when the above-quoted language is read in context: the court must first determine "whether the parties' agreement to arbitrate reache[s] *the statutory issues*, and then, upon finding it [does], consider[ ] whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of *those claims*." *Id.* (emphasis added); *see also Genesco, Inc. v.*

*T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *Arbitration Between Standard Tallow Corp. and Kil–Management A/S,* 901 F.Supp. 147, 149 (S.D.N.Y.1995). Moreover, the language from *Mitsubishi* refers only to legal constraints imposed by *federal* statutes. *See Mitsubishi,* 473 U.S. at 623 n. 10, 627, 105 S.Ct. at 3352 n. 10, 3354; *Genesco,* 815 F.2d at 844; *Standard Tallow,* 901 F.Supp. at 149.

Here, the dispute does not arise from the parties' respective rights and obligations pursuant to a federal statute, such that Congress may have intended to limit their ability to agree to arbitrate such a dispute. Rather, the dispute arises from the parties' rights and obligations pursuant to the very same agreement containing the arbitration clause. Moreover, the putative "legal constraints" on the agreement to arbitrate originate from state law.

▮ CPL's next argument is essentially that, because section 8 renders the policy unenforceable by NEIL, CPL cannot properly be said to have "made" any arbitration agreement whatsoever. However, the Court concludes that the effect, if any, that section . 8 has on the arbitration clause is a determination to be made by the arbitrator, not the Court.

The controlling authority on this issue is the Supreme Court decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In that case, one party sought—via litigation rather than arbitration—to rescind a contract containing a broad arbitration clause on the ground that the entire contract—not just the arbitration clause—was fraudulently induced. The Court held that

> if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of 9 U.S.C. § 4] does not permit the federal court to consider claims of

fraud in the inducement of the contract generally.

*Id.* at 403–04, 87 S.Ct. at 1806 (footnote omitted); *see also Doctor's Associates, Inc. v. Distajo,* 66 F.3d 438, 457 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996); *S.A. Mineracao da Trinidade–Samitri v. Utah Intern., Inc.,* 745 F.2d 190, 195 (2d Cir.1984); *Hamilton Life Ins. Co. of N.Y. v. Republic Nat'l Life Ins. Co.,* 408 F.2d 606, 610 (2d Cir.1969).

CPL asserts that *Prima Paint* is inapplicable to a claim that a contract is unenforceable by one party but fully enforceable by the other, as opposed to a claim that the contract is voidable for fraudulent inducement. The cases interpreting *Prima Paint* and extending it beyond the fraudulent inducement context have noted an important distinction in this regard. The courts have distinguished between claims such as fraud in the inducement, which go to whether a party may avoid a contract to which it concedes having manifested assent, *see* Restatement (Second) of Contracts § 7 comment b, § 164(1) (1981), and claims such as fraud in the factum, which go to whether the party ever willingly manifested assent to the contract at all.[1] *See id.* § 163.

For example, in *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1139 (9th Cir.1991), the plaintiffs succeeded (at least preliminarily) in avoiding arbitration of a dispute arising from an agreement containing an arbitration clause by claiming that the person who purported to sign the agreement on their behalf had no authority to do so. The Ninth Circuit rejected the defendants' contention that, pursuant to *Prima Paint,* such a claim must be submitted to the arbitrator. *See id.* at 1140. Although conceding that "the rationale of *Prima Paint* extends to attempts to rescind contracts on" grounds other than fraudulent inducement, the court distinguished between "challenges seeking to *avoid* or *rescind* a contract," which challenges would be for the arbitrator

---

1. Fraud in the "inducement" typically occurs where a misrepresentation goes to the subject matter underlying the contract. Fraud in the "factum," or the "execution," on the other hand, occurs where "the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect." E. Allan Farnsworth, Contracts § 4.10 (2d ed. 1990).

to decide, and "challenges going to the very existence of a contract that a party claims never to have agreed to," which challenges would be for the court to decide. *Id.*

In *Belship Navigation, Inc. v. Sealift, Inc.*, 95 Civ. 2748 (RPP), 1995 WL 447656, at *4–5 (S.D.N.Y. July 28, 1995), the court drew a similar distinction. Both parties there agreed that the contract they entered into, a charter fixture for a vessel, was void *ab initio* because it violated federal regulations. *See id.* at *2. Nonetheless, the court held that the arbitration provision contained in the void contract was separable and granted the motion to compel arbitration. *See id.* at *5. The court distinguished between claims that a party's manifestation of assent is for some reason not effective—which are arbitrable—and claims that a party never willingly manifested assent at all—which are to be decided by the court. *See id.* at *4–5; *see also Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 244 (5th Cir.1986).

■ The distinction drawn in these cases is eminently sound. Where a party concedes that it willingly manifested assent to a contract that includes an arbitration clause, but claims that it was induced to do so "by fraud, mistake, or duress," or that the party was an infant at the time, or that some other circumstance justifies that party in seeking to avoid the contract, *see* Restatement (Second) of Contracts § 7 comment b, that party's claim is simply a defense to arbitrability that is itself arbitrable. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■ Where, however, a party claims that it never actually manifested assent to a contract containing an agreement to arbitrate—for example, because its signature was forged on the contract, or because an imposter purported to be an agent of that party with authority to bind it, or because the party was fraudulently told the contract was something other than what it actually was, or because the party did not intend to manifest assent but was physically compelled to do so—that party cannot be forced to arbitrate until it is first established by a court that the party willingly manifested assent to the underlying contract. *See Three Valleys*, 925 F.2d at 1140–41; Restatement (Second) of Contracts § 163 comment a; *id.* § 174 comment a.

Other courts, including several others in this circuit, have expressly made this distinction as well. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir.1986) (per curiam) (distinguishing between fraud in the inducement and fraud in the factum); *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 728–29 (8th Cir.1976) (distinguishing between laches and waiver defenses, on the one hand, and defense of lack of authority of agent to bind principle, on the other); *PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F.Supp. 177, 181 (S.D.N.Y.1994) (accepting distinction drawn in *Three Valleys*); *Jones v. Sea Tow Services Freeport New York, Inc.*, 828 F.Supp. 1002, 1007–10 (E.D.N.Y.1993) (distinguishing between fraud in the inducement and fraud in the factum), *rev'd on other grounds*, 30 F.3d 360 (2d Cir.1994); *Kyung In Lee v. Pacific Bullion (New York) Inc.*, 788 F.Supp. 155, 157–58 (E.D.N.Y.1992) (same); *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 218 (S.D.N.Y.1978) (distinguishing between claims that affect "only the validity, legality or enforceability of a contract" from those that would "negate the existence of a contract").

This reasoning is reinforced by Second Circuit cases holding that it is for the arbitrator and not the court to pass on a claim that a contract containing an arbitration clause is unenforceable: for failure to abide by a time limitation included in the agreement itself, *see Conticommodity Serv. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir.1980); pursuant to the doctrine of laches, *see Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 571–72 (2d Cir. 1968); or because the party seeking arbitration has engaged in activity constituting waiver (other than prior litigation), *see Doctor's Associates*, 66 F.3d at 454–56. *See also Benoay v. Prudential–Bache Sec. Inc.*, 805 F.2d 1437, 1441 (11th Cir.1986) (stating that claims of "adhesion, unconscionability, waiver

of judicial remedies without knowledge, and lack of mutuality of obligation" are to be decided by arbitrator); *Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528–29 (1st Cir.1985) (stating that claims of mutual mistake and frustration of purpose are for arbitrator to decide).

Seen in this light, CPL's claim that the policy is rendered unenforceable by NEIL by virtue of section 8 must be submitted to the arbitrator. CPL does not dispute the fact that it willingly manifested its assent to the policy, but contends only that its manifestation of assent, by virtue of section 8, cannot legally bind it to any policy provision it now seeks to avoid. Thus, like a claim that the policy was fraudulently induced, its claim that the policy may not be enforced by NEIL is a defense to arbitrability that must itself be arbitrated.

CPL also urges that its challenge to the policy goes only to the arbitration clause, not to the policy as a whole. If so, that challenge would be for the Court to decide, pursuant to *Prima Paint.* However, that claim is belied by CPL's own actions. For example, by filing an action in Texas state court, it has made clear its position that the forum selection clause choosing the Southern District of New York as the proper venue for any non-arbitrable dispute is not enforceable by NEIL.

Further, by claiming that section 8 precludes enforcement of the arbitration clause by NEIL and by including claims pursuant to Texas law in its state action, CPL has taken the position that the choice-of-law clause in the policy is also unenforceable. In short, CPL's claim is not that the arbitration clause is unenforceable by NEIL, but that the entire policy, including the arbitration clause, is unenforceable by NEIL.

*Prima Paint* does contain an ambiguity as to whether or not challenges of this type are arbitrable. Read one way, the case stands for the proposition that the court may decide a challenge to an arbitration provision only when the challenge goes *solely* to the arbitration clause and not to the remainder of the contract at all. *See Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987); *Benoay,* 805

F.2d at 1441; *Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 389–90 (7th Cir.1984). Read another way, the court must decide a challenge to an arbitration provision whenever the challenge goes to the validity of the arbitration provision, regardless of whether the challenge also goes to the rest of the contract. *See C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin and Jenrette Sec. Corp.,* 912 F.2d 1563, 1568 (6th Cir.1990); *Rush v. Oppenheimer & Co.,* 681 F.Supp. 1045, 1048–53 (S.D.N.Y.1988); *Jeppsen v. Piper, Jaffray & Hopwood, Inc.,* Civ. No. 88–C–297, 1988 WL 121893, at *3 (D.Utah Aug. 16, 1988).

However, even courts that take the latter approach require that at least some of the allegations that the contract is invalid be specifically directed to the arbitration provision, such as that it was used as a tool to further a fraudulent scheme, in order to permit the court to decide the issue. These cases hold that where it is alleged that the arbitration agreement is invalid for the same general reason that the contract as a whole is invalid, the challenge must be decided by the arbitrator. *See Arnold v. Arnold Corp.,* 920 F.2d 1269, 1278–79 (6th Cir.1990); *Hires Parts Serv., Inc. v. NCR Corp.,* 859 F.Supp. 349, 355 (N.D.Ind.1994); *Rosen v. Waldman,* 93 Civ. 0225 (PKL), 1993 WL 403974, at *3 (S.D.N.Y. Oct. 7, 1993); *cf. Moseley v. Electronic & Missile Facilities, Inc.,* 374 U.S. 167, 171, 83 S.Ct. 1815, 1817–18, 10 L.Ed.2d 818 (1963).

Here, the claim of unenforceability does not specifically relate to the arbitration provision. Rather, the arbitration clause is claimed by CPL to be unenforceable by NEIL only because the entire policy is unenforceable by NEIL. Under these circumstances, pursuant to *Prima Paint,* the challenge goes not to the arbitration provision in particular but to the contract generally, and the dispute is for the arbitrator, not this Court.

Finally, CPL cites the Supreme Court decision in *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984), to demonstrate that it is for courts, not arbitrators, to decide whether a state statute purporting to bar a party from en-

**436**

forcing an arbitration clause succeeds in doing so. Although the Supreme Court did not expressly address the issue, CPL argues, the fact that the Court determined that the California statute at issue in that case conflicted with the Federal Arbitration Act and was therefore preempted demonstrates that the Court implicitly held it was proper for courts, not arbitrators, to decide such issues.

However, the Court in *Southland* made clear that it viewed the California statute as directed only to arbitration provisions. *See id.* at 16 n. 11, 104 S.Ct. at 861 n. 11; *see also Perry v. Thomas,* 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987). Indeed, it was this aspect of the California statute that rendered it inconsistent with the FAA. *See Doctor's Associates, Inc. v. Casarotto,* — U.S. —, — – —, 116 S.Ct. 1652, 1656–57, 134 L.Ed.2d 902 (1996); *Allied–Bruce Terminix Co. v. Dobson,* — U.S. —, —, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995); *Perry,* 482 U.S. at 493 n. 9, 107 S.Ct. at 2527 n. 9. This placed it within that aspect of *Prima Paint* that requires courts to decide challenges to arbitration provisions that do not implicate the contract as a whole.

Pursuant to *Prima Paint,* CPL's challenge to NEIL's ability to enforce the policy does not go to the "making" of the arbitration clause. Thus, neither the making of an agreement to arbitrate this dispute nor CPL's refusal to arbitrate is in issue. Accordingly, pursuant to 9 U.S.C. § 4, the petition to compel arbitration must be granted.

*C. Stay of the Texas Action*

The question remains whether the Court may stay the pending Texas state court action pending final disposition of the arbitration. Pursuant to the Anti–Injunction Act, 28 U.S.C. § 2283, a Court may not issue such a stay "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The courts in this district have consistently held that a stay, when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state court proceeding, falls within one or both of the latter two exceptions. *See, e.g., Ferrari*

*North America, Inc. v. Crown Auto Dealerships,* 94 Civ. 8541 (KMW), 1995 WL 614558, at *5 (S.D.N.Y. Oct. 19, 1995); *Pervel Indus., Inc. v. TM Wallcovering, Inc.,* 675 F.Supp. 867, 870 (S.D.N.Y.1987), *aff'd,* 871 F.2d 7 (2d Cir.1989); *Hunt v. Mobil Oil Corp.,* 557 F.Supp. 368, 372 (S.D.N.Y.), *aff'd,* 742 F.2d 1438 (2d Cir.1983); *Burger Chef Sys., Inc. v. Baldwin Inc.,* 365 F.Supp. 1229, 1233 (S.D.N.Y.1973); *Network Cinema Corp. v. Glassburn,* 357 F.Supp. 169, 172 (S.D.N.Y. 1973); *Necchi Sewing Machine Sales Corp. v. Carl,* 260 F.Supp. 665, 669 (S.D.N.Y.1966). Moreover, the Second Circuit has approved of this reasoning. *See Standard Microsystems Corp. v. Texas Instruments Inc.,* 916 F.2d 58, 60 (2d Cir.1990).

Because this Court has made a "conclusive ruling[ ]" that this dispute is arbitrable and because the effect of this ruling "may be undermined by threatened relitigation" in the Texas state court, *id.,* the motion for a stay of CPL's action against NEIL in the Texas state court pending final disposition of the arbitration is granted.

### CONCLUSION

For the foregoing reasons, NEIL's petition to compel arbitration and to enjoin CPL from proceeding against it in the Texas action is granted.