OPINION
This is an appeal by defendant, James M. Marietta, III, from a judgment of the Franklin County Court of Common Pleas, denying defendant's motion to stay proceedings pending arbitration.
On January 9, 1999, plaintiff, Harold T. Duryee, Superintendent of Insurance for the Ohio Department of Insurance, acting on behalf of the PIE Mutual Insurance Company ("PIE"), filed a complaint, naming as defendants Larry E. Rogers, James M. Marietta, III, and Warren L. Udisky. The complaint alleged that plaintiff, pursuant to R.C. Chapter 3903, was seeking to recover PIE assets wrongfully possessed by the defendants who, at all material times pertinent to the complaint, were PIE officers.
Plaintiff's complaint alleged the following factual background. On December 10, 1997, plaintiff filed a complaint for rehabilitation in the Franklin County Court of Common Pleas, seeking an order authorizing plaintiff to rehabilitate PIE and to obtain appropriate relief to protect PIE's policyholders, creditors and the public. On December 13, 1997, PIE consented to the order appointing plaintiff as rehabilitator of PIE. The rehabilitation order stated in part that the rehabilitator "shall forthwith take and secure possession of all assets and property of * * * PIE, including * * * rights of action * * * and administer them under the general supervision of the Court."
The facts of the complaint further alleged that, pursuant to the order of rehabilitation, plaintiff had taken control of PIE and conducted an investigation into the activities that the named defendants performed while PIE executives. It was alleged that plaintiff's investigation revealed that the defendants each "received, converted, diverted or otherwise transferred certain PIE assets in a manner that was (i) improper (ii) unauthorized or (iii) contrary to their fiduciary duty of care and loyalty owed to PIE." Plaintiff asserted that these wrongfully transferred assets included funds relating to "employment termination agreements" of the defendants.
It was further averred in the complaint that, on July 29, 1997, defendants Rogers, Marietta and Udisky each received commutation of their PIE employment agreements. Plaintiff alleged that, while these commutation agreements purported to be the result of PIE's determination that "it is in the best interests" of PIE to terminate the employment contracts of Rogers, Marietta and Udisky, there had been no action or resolution of the PIE Board of Directors authorizing these commutation agreements nor any action or resolution making such a "best interest" determination.
Regarding defendant Marietta, the complaint specifically alleged that "Marietta's commutation agreement states that PIE `on the date hereof has paid' Marietta $3,568,863 in consideration of the termination of his employment contract. However, Marietta's commutation agreement permits Marietta to remain employed at PIE on substantially the same terms as the purportedly terminated employment contract." Further, the complaint averred that "[n]ot only did the PIE Board of Directors not authorize the commutation agreements of Defendants Rogers, Marietta, and Udisky, it did not authorize the subsequent re-hire of them."
Plaintiff's complaint alleged causes of action for breach of fiduciary duty of care and duty of loyalty (count one), restitution based on unjust enrichment (count two), a constructive trust based on unjust enrichment (count three), and conversion (count four). Count five of the complaint sought a preliminary and permanent injunction.
On February 9, 1998, defendant Marietta (hereafter "Marietta") filed a motion to stay proceedings pending arbitration. In the accompanying memorandum in support, Marietta asserted that the claims alleged against him were subject to arbitration under an agreement between Marietta and PIE. Defendant Rogers filed a similar motion to stay proceedings pending arbitration on February 13, 1998. On March 10, 1998, plaintiff filed a motion in opposition to Rogers and Marietta's motions to stay proceedings pending arbitration. Defendant Udisky filed a motion to stay proceedings pending arbitration on March 17, 1998.
On April 14, 1998, defendant Udisky filed a notice to withdraw his motion to stay proceedings pending arbitration. Defendant Rogers also subsequently filed a notice to withdraw his motion to stay proceedings pending arbitration.
On July 28, 1998, plaintiff filed a motion to dismiss the claims brought against defendant Udisky relating to the commutation agreement dated July 29, 1997, on the basis that Udisky "has returned to the Liquidator all of the payments received by him pursuant to the Commutation Agreement." The trial court granted the motion to dismiss by entry filed July 31, 1998. Plaintiff also filed a motion to dismiss, without prejudice, the claims against defendant Rogers on the basis of Rogers' "fulfillment of the initial obligations set forth in his Settlement Agreement with the PIE Mutual Insurance Company." The trial court subsequently granted plaintiff's motion and dismissed, without prejudice, the claims against defendant Rogers.
On September 18, 1998, the trial court held a hearing on Marietta's motion to stay proceedings pending arbitration. By order and judgment entry filed September 21, 1998, the trial court denied Marietta's motion to stay proceedings pending arbitration.
On appeal, Marietta sets forth the following single assignment of error for review:
 The Court of Common Pleas erred in denying Appellant Marietta's Motion To Stay Proceedings Pending Arbitration.
At issue in this matter are two agreements. The first, titled "employment agreement," purports to be an agreement executed on March 31, 1997 between PIE and Marietta, containing the signatures of Marietta, defendant Rogers and Herbert S. Bell. The employment agreement consists of sixteen articles, including provisions for terms of the contract (i.e., "for a period of ten years certain"), services to be rendered, compensation and other benefits of the employee, termination of the agreement and disability of the employee.
The employment agreement also contains an arbitration provision under Article XI, which states:
 The parties to this Contract stipulate that in the event of a dispute as to the conditions of performance thereof, by any of the parties hereto, that Ohio law shall govern and that all such disputes shall be resolved by final and binding arbitration[,] in Cleveland, Ohio and pursuant to the rules and regulations of the American Arbitration Association, each party to select an arbitrator of its choice and the two arbitrators to agree upon a third arbitrator, and that the conditions of arbitration thereafter shall be under such terms, conditions, time and place also shall be set forth by the arbitrators for such resolution. During any such period of arbitration and pending a final decision under said arbitration, COMPANY shall continue to be obligated to make all compensation and other payments required to be made to or on behalf of EMPLOYEE as herein set forth.
A subsequent agreement was executed on July 29, 1997 (hereafter the "July 29 agreement"), in which the prior employment agreement of March 31, 1997 was terminated and replaced with the July 29 agreement. The terms of the July 29 agreement provided for Marietta to be paid "on the date hereof" the sum of $3,568,863 "in consideration of the termination of such `Employment Contract.'" The July 29 agreement further provided in pertinent part that "[t]he provisions of * * * Article XIII Arbitration [contained in the prior Employment Contract] * * * are incorporated herein by reference." The July 29 agreement incorporated certain other provisions of the March 31, 1997 employment agreement, including the articles pertaining to services to be rendered and compensation. Marietta and Rogers signed the July 29 agreement.
In the present case, at the hearing on the motion, plaintiff asserted two separate grounds in support of the contention that the matter was not subject to arbitration. First, plaintiff argued that the arbitration agreement was narrow and did not apply to the allegations contained in plaintiff's complaint. Alternatively, plaintiff contended that PIE did not authorize the making of the July 29 agreement, and thus PIE should not be forced to arbitrate a matter for which it had not contracted. The trial court, in denying Marietta's motion to stay pending arbitration, determined that the issues constituting the subject of plaintiff's action "don't fall within the scope of the conditions of performance of contract." (Tr. 15.) The court did not reach plaintiff's alternative contention that PIE did not authorize the July 29 agreement.
At the outset, we recognize that an analysis of whether a dispute falls within the scope of an arbitration agreement should logically follow the initial determination whether the parties ever entered into an agreement in the first place. However, inasmuch as the trial court's decision was predicated upon a finding that the claims alleged were outside the scope of the contract language, we will address that issue first.
R.C. 2711.01(A) provides in part that a provision in a written contract "to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." In general, a clause providing for arbitration "should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Didado v. Lamson SessionsCo. (1992), 81 Ohio App.3d 302, 304. Further, there exists a "strong presumption in favor of arbitrability, and any doubts should be resolved in favor of coverage under the arbitration clause." Id. See, also, Teramar Corp. v. Rodier Corp. (1987),40 Ohio App.3d 39, 40 ("It is the policy of the law to favor and encourage arbitration").
The trial court, in holding that the claims raised by plaintiff were not within the scope of the arbitration provision, concluded that the clause at issue "should be narrowly construed." (Tr. 15.) At issue is whether a clause in an employment agreement providing for arbitration of "a dispute as to the conditions of performance thereof" is sufficiently broad to cover plaintiff's claims, including the contention that Marietta breached his duty of care and loyalty by wrongfully transferring funds relating to Marietta's employment termination agreement.
Marietta maintains that the two agreements at issue constitute the employment contract between PIE and himself, and that these agreements defined his relationship with PIE and imposed any obligations upon him to PIE and its policyholders. Marietta argues that the arbitration provision's application to "a dispute as to the conditions of performance" of the employment agreements at issue necessarily applies to any dispute concerning the manner in which the parties were to perform their respective obligations under those agreements.
Plaintiff, on the other hand, argues that the arbitration clause is not as broad as more typical arbitration provisions such as the clause in Weiss v. Voice/Fax Corp. (1994),94 Ohio App.3d 309, cited in plaintiff's brief. In that case, the relevant language provided for arbitration of "any controversy, dispute or claim arising out of or relating to the Agreement."Id. at 313. While we agree with plaintiff's contention that the arbitration language in the present case is not as broad as that of the clause in Weiss or as in other cases also cited by plaintiff, we do not find the mere designation of a clause as broad or narrow to be conclusive. Further, the fact that a claim may sound in tort does not necessarily exclude such claim from an arbitration clause. It has been held that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Gregory v. Electro-Mechanical Corp. (C.A.11, 1996), 83 F.3d 382, 384. Thus, "`[i]f the allegations underlying the claims "touch matters" covered by the parties' * * * agreements, then those claims must be arbitrated, whatever the legal label attached to them." Collins Aikman Products Co. v. BuildingSystems, Inc. (C.A.2, 1995), 58 F.3d 16, 21, quoting Genesco, Inc.v. T. Kakiuchi Co., Ltd. (C.A.2, 1987), 815 F.2d 840, 846.
In the present case, plaintiff's complaint sought restitution for funds paid out to the named defendants as a result of the "commutation agreements" entered into on July 29, 1997. In particular, as to defendant Marietta, the complaint alleges that Marietta was paid $3,568,863 under the July 29 agreement in consideration of the termination of his prior employment agreement. The complaint further alleges that the July 29 agreement "permits Marietta to remain employed at PIE on substantially the same terms as the purportedly terminated employment contract."
Based upon the allegations asserted, we conclude that the arbitration clause contained in the employment agreements at issue, providing for arbitration of a dispute "as to conditions of performance thereto," is broad enough to encompass claims of breach of duty, restitution and conversion relating to such agreements. "Performance" has been defined as "[t]he fulfillment or accomplishment of a promise, contract, or other obligation according to its terms." Black's Law Dictionary (5 Ed. 1979) 1024. Plaintiff's claim that Marietta breached his duty of care in receiving excessive payments out of "funds relating to [Marietta's] `employment termination agreement'" has its origin in the July 29 agreement, and the dispute arguably implicates issues of whether Marietta fulfilled his obligations under the agreements at issue.
As noted, plaintiff contends that "conditions of performance thereto" is limiting, and plaintiff suggests that the July 29 agreement contains a number of "conditions" relating to the performance of obligations which could be viewed as conditions subsequent. Marietta counters that the July 29 agreement contains no conditions precedent or subsequent, and that any reading of the arbitration provision that would limit its scope to only such "conditions" would render the provision meaningless. To the extent that the phrase "conditions of performance thereto" is ambiguous, we are guided by the principle that "[a]mbiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." Gaffney v. Powell (1995), 107 Ohio App.3d 315,320. Thus, we conclude that the trial court erred in its determination that the claims alleged fell outside the scope of the arbitration provision.
While we disagree with the trial court's holding as to the scope of the arbitration clause and its application to the facts of this case, we must still consider plaintiff's contention that PIE was never a party to the agreements in the first instance. As noted, at the hearing before the trial court, plaintiff contended, as an alternative basis to denying Marietta's motion to stay proceedings, that PIE never authorized the agreements that Marietta seeks to arbitrate.
Marietta contends that any challenge as to the validity of the contract must be brought before an arbitrator. In support, Marietta relies on Prima Paint Corp. v. Flood Conklin Mfg. Co.
(1967), 87 S.Ct. 1801. In Prima Paint, the issue was whether, under the United States Arbitration Act, the federal court should resolve a claim of "fraud in the inducement" of an entire contract, or whether the matter should be referred to an arbitrator. Id. at 1805. The court in Prima Paint held in part:
 * * * [I]f the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the "making" of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. * * * We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. Id. at 1806.
Plaintiff contends that Prima Paint is distinguishable because plaintiff specifically challenges the "making" of the arbitration agreement. We agree.
Plaintiff relies in part on Three Valleys MunicipalWater Dist. v. E.F. Hutton Co., Inc. (C.A.9, 1991),925 F.2d 1136. In that case, the plaintiffs opposed the defendant's motion to compel arbitration on the ground that the individual who signed agreements providing for binding arbitration did not have the authority to bind plaintiffs. The trial court held that the issue whether the signatory had authority to bind the plaintiffs should be submitted to an arbitrator. Plaintiffs appealed from the trial court's decision.
On appeal, defendant Shearson argued that Prima Paint,supra, "extends to all challenges regarding the `making' of a contract as opposed to the making of an arbitration clause."Three Valleys, supra, at 1140. The court in Three Valleys
rejected Shearson's argument, holding:
 We do not read Prima Paint so broadly. * * * [W]e read Prima Paint as limited to challenges seeking to avoid or rescind a contract — not to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. * * *
 Under this view, Prima Paint applies to "voidable" contracts — those "where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." Restatement (Second) Contracts § 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is "voidable" because the parties have agreed to arbitrate the dispute. But, because an "arbitrator's jurisdiction is rooted in the agreement of the parties," * * * a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision.
 Ample case law supports this holding. * * * In fact, there are at least four cases, under the Federal Arbitration Act, where a court has held that the question of whether a particular individual has authority to bind a party must be determined by the court, not by an arbitrator. * * * Three Valleys, supra, at 1140-1141. (Citations omitted.) (Emphasis sic.)
Similarly, in Par-Knit Mills, Inc. v. StockbridgeFabrics Co., Ltd. (C.A.3, 1980), 636 F.2d 51, the plaintiff-corporation appealed from the trial court's order to stay proceedings pending arbitration. The plaintiff argued that a corporate employee who signed an agreement lacked authority to bind the corporation. Plaintiff asserted that, under such circumstances, the court rather than an arbitrator should decide the matter. The court in Par-Knit agreed, holding:
 Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.
* * *
 The mere execution of a document, * * * even assuming that it is executed by a corporate agent, does not negate the factual assertion that such signature was not intended to represent a contractual undertaking. * * * If the production manager did not have the actual or apparent authority to execute the contract, the corporation cannot be bound, no matter how clearly the document was labeled. Id. at 54-55.
Some federal courts, in considering the scope of PrimaPaint, have "distinguished between claims such as fraud in the inducement, which go to whether a party may avoid a contract to which it concedes having manifested assent, * * * and claims such as fraud in the factum, which go to whether the party ever willingly manifested assent to the contract at all." In the Matter ofNuclear Electric Insurance, Ltd. Central Power and Light Co.
(S.D.N.Y. 1996), 926 F. Supp. 428, 433. Thus, in instances where a party concedes that it willingly manifested assent to a contract that includes an arbitration clause, "but claims that it was induced to do so `by fraud, mistake, or duress,' * * * or that some other circumstance justifies that party in seeking to avoid the contract, * * * that party's claim is simply a defense to arbitrability that is itself arbitrable." Id. at 434. However, where a party asserts that it "never actually manifested assent to a contract containing an agreement to arbitrate — for example, * * * because an imposter purported to be an agent of that party with authority to bind it, * * * that party cannot be forced to arbitrate until is it first established by a court that the party willingly manifested assent to the underlying contract." Id. See, also,Kyung in Lee v. Pacific Bullion, Inc. (E.D.N.Y. 1992),788 F. Supp. 155, 157 ("The majority of courts which have confronted this question directly have held that a bona fide claim of fraud in the factum as to the entire contract takes a case outside the rule of Prima Paint"); Cancanon v. Smith Barney, Harris, Upham Co. (C.A.11 1986), 805 F.2d 998, 1000 ("where the allegation in one of fraud in the factum, i.e., ineffective assent to the contract, the issue is not subject to resolution pursuant to an arbitration clause contained in the contract documents"). This court has also distinguished Prima Paint on such grounds. SeeRoberts v. Bank of Am. NT SA (1995), 107 Ohio App.3d 301, 305
("where the allegation is that of fraud in the factum, i.e.,
ineffective assent to the contract, the intent to arbitrate will not be presumed").
In the present case, plaintiff's complaint alleged that PIE did not authorize the agreements signed by defendants Marietta and Rogers. We agree with plaintiff's contention that the issue of whether a particular individual has authority to bind a party is a matter to be determined by the court rather than an arbitrator. Three Valleys, supra, at 1141. As noted by the court in Three Valleys, "[t]o require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the `first principle' of arbitration that `a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'" Id. at 1142. We further note that the United States Supreme Court, subsequent to PrimaPaint, supra, has stated that "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." First Options of Chicago, Inc. v.Kaplan (1995), 115 S.Ct. 1920, 1923.
One final issue raised by plaintiff remains for consideration. Specifically, plaintiff contends that Marietta failed, at the hearing before the trial court, to prove the enforceability of the contracts, and therefore "the issue of whether Marietta is entitled to present such evidence now is waived by Marietta's failure to seek such relief before the trial court." We have previously noted, however, that the trial court, in deciding the issue of arbitrability, only considered the scope of the arbitration clause and did not address the issue whether PIE authorized the making of the agreements and arbitration clause. We conclude that the question regarding the validity of PIE's assent to the arbitration clause contained in the agreements at issue should be decided in the first instance by the trial court and, based on the record of proceedings in this case, we disagree with plaintiff's contention that this issue was waived. In light of our determination, we remand this matter to the trial court to adjudicate the issue whether PIE authorized the making of the agreements containing the arbitration clause.
Accordingly, Marietta's single assignment of error is sustained to the extent provided above, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
TYACK, J., and LAZARUS, P.J., concur.